IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| GLEN MARTIN ENGINEERING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-4109-CV-C-NKL |
| ) | |
| ALAN DICK & COMPANY, LTD., and ) | |
| ALAN DICK & COMPANY USA INC., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Plaintiff Glen Martin Engineering, Inc. ("GME") filed this action against Defendants Alan Dick & Company, Ltd. ("ADC UK"), and Alan Dick & Company USA Inc., ("ADC USA"), asserting claims for breach of contract and action on account. Pending before the Court are Defendants' Motions to Dismiss for Lack of Personal Jurisdiction [Docs. ## 43 and 46]. For the reasons stated herein, the Court denies both motions.

**I.    Background**

Plaintiff GME is a Missouri corporation with its principal place of business in Boonville, Missouri. GME is a manufacturer and provider of cellular telephone tower parts and services. Defendant ADC UK is a United Kingdom limited company with its headquarters in Cheltenham, Gloucestershire, England. Defendant ADC USA is a New Hampshire corporation with its principal place of business in Webster, Massachusetts. ADC USA is a wholly-owned subsidiary of ADC UK. Neither ADC UK nor ADC USA are

1

registered to do business in Missouri and neither company has offices or employees stationed in the state.

Alan Dick & Company (Trinidad & Tobago) Ltd. ("ADC Trinidad") is a company with its principal place of business in Port of Spain, Trinidad & Tobago. ADC Trinidad is a wholly-owned subsidiary of ADC USA. Both Defendants and ADC Trinidad are in the business of contracting with foreign businesses for the installation of cellular telephone network services and cellular telephone sites.

On September 28, 2005, Tim Soule, as President of ADC USA, signed a "GME Account Enrollment" form requesting $500,000 in credit per month, for the purpose of purchasing cell phone towers from GME. *See* GME Account Enrollment form (Ex. A to Pl.'s Sugg. in Opp. to ADC USA's Mot. to Dismiss); Martin Aff. ¶ 6. Between September and November of 2005, Tim Soule and Gavin Geraghty came to GME's headquarters and met with Mr. Tatum Martin, GME's Director of Operations, in Boonville, Missouri, for the purpose of entering into an agreement to purchase cell phone towers from GME. Martin Aff. ¶¶ 2, 5.

Gavin Geraghty had been an employee of ADC UK since September 14, 2005. *See* Service Agreement Between ADC UK and Gavin Geraghty (Ex. B to Pl.'s Sugg. in Opp. to ADC UK's Mot. to Dismiss) (hereinafter "Service Agreement"). His agreement with ADC UK required Mr. Geraghty to "work exclusively for [ADC UK] and . . . [to] not at any time . . . unless with company approval" work as an employee for any other business. *Id.* at ¶ 3.5. Part of Mr. Geraghty's duties under his contract with ADC UK involved having a country

of assignment, or being appointed to work in a particular country for a company in the Alan Dick group of companies. Carruthers Depo. 22:18–23:5. Under the terms of his contract with ADC UK, Geraghty had a duty to:

> (a) devote the whole of his time, attention and ability . . . to the businesses of the [Alan Dick Group of companies (the "Group")] giving at all times the full benefit of his knowledge, expertise, technical skill and ingenuity, (b) use his best endeavors to promote the interests of the Group, (c) faithfully and diligently perform such duties . . . and exercise such powers as may from time to time be assigned to or vested in him by, and obey the lawful direction of, his line Manager/Director and (d) at all times keep the 'in country' line Manager/Director promptly and fully informed . . . of his conduct of the business or affairs of [ADC UK] and provide such information . . . as the [ADC UK] may require.

Service Agreement at ¶ 3.1. Mr. Geraghty was assigned to serve as general manager of ADC Trinidad during the relevant time period. Carruthers Depo. 20:16-23. Geraghty had a separate agreement with ADC Trinidad. Carruthers Depo. 41:6–10. As general manager of ADC Trinidad, Mr. Geraghty reported to Tim Soule, President of ADC USA. *Id.* at 41:14–17. At all relevant times, Mr. Geraghty received a salary from ADC UK. Service Agreement at ¶ 4; Carruthers Depo. 22: 13-17.

On July 10, 2006, at the request of ADC USA, GME sent two quotations to ADC USA's offices in Massachusetts quoting prices for two different types of cell phone towers. Martin Aff. ¶ 9; Price Quotation # 103467 (Ex. D to Pl.'s Sugg. in Opp. to ADC USA's Mot. to Dismiss); Price Quotation # 103469 (Ex. E to Pl.'s Sugg. in Opp. to ADC USA's Mot. to Dismiss).

Both the GME Account Enrollment form signed by Tim Soule, as well as the price quotations sent by GME to ADC USA, contained provisions requiring the party contracting with GME to agree to its "Terms and Conditions Relating to All Sales." Subsection 1.25 of the Terms and Conditions states:

> This agreement shall be construed according to the laws of the State of Missouri. Any litigation will be handled through the Western District of the state of Missouri.

*See* Pl.'s Sugg. in Opp. to ADC USA's Mot. to Dismiss, Exs. D & E; Martin Aff. ¶¶ 7–9.

On August 1, 2006, GME received two purchase orders at its headquarters in Boonville, Missouri, for the purchase of cell phone towers. Martin Aff. ¶ 10. The purchase orders referenced the two quotations sent by GME to ADC USA, and requested shipment to Alan Dick Trinidad. On December 7, 2006, GME received an additional purchase order referencing the quotations sent by GME to ADC USA signed by Mr. Geraghty, also requesting shipment from Missouri to Trinidad.

## II. Discussion

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff has the burden of making a prima facie showing that personal jurisdiction exists. *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) (citations omitted). The Court views the evidence in the light most favorable to the plaintiff, and resolves factual conflicts in the plaintiff's favor. *Digi-Tel Holdings, Inc. v. Proteq Teclecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). Even so, a plaintiff must produce some evidence; conclusory allegations are insufficient. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072–73 (8th Cir. 2004).

4

To exercise personal jurisdiction over a nonresident defendant, a federal court in a diversity action must ordinarily determine first, whether that defendant is subject to the forum state's long-arm statute and, second, whether the exercise of personal jurisdiction would comport with due process. *Primus Corp. v. Centreformat Ltd.*, 221 Fed. Appx. 492, 93 (8th Cir. 2007) (citing *Romak USA, Inc. v. Rich*, 384 F.3d 979, 84 (8th Cir. 2004)). Because Missouri's long-arm statute[1] extends jurisdiction to all cases where due process would permit the assertion of personal jurisdiction, the Court need only consider whether the exercise of jurisdiction in this case would comport with due process. *Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000) (citing *State v. Pinnell*, 454 S.W.2d 889, 92 (Mo. banc 1970)).

"Due process requires 'minimum contacts' between a nonresident defendant and the forum state, such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Steinbuch*, 518 F.3d at 585 (quoting *World-Wide Volkswagen*

---

[1]Missouri's long-arm statute provides:
1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:
    (1) The transaction of any business within this state;
    (2) The making of any contract within this state;
. . . .
3. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.
. . . .
Mo. Rev. Stat. § 506.500.

*Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980)).  These contacts must be such that the defendant "should reasonably anticipate being haled into court" in Missouri.  *Wold-Wide Volkswagen*, 444 U.S. at 297.  "The minimum contact inquiry focuses on whether the defendant [has] purposely availed itself of the privilege of conducting activities within the forum state and thereby invoked the benefits and protections of its laws."  *Steinbuch*, 518 F.3d at 586 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

The Supreme Court has differentiated between general and specific personal jurisdiction.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  A court may exercise specific personal jurisdiction over a nonresident defendant where the cause of action arises from or is connected to the defendant's contacts with the forum state.  *Dever*, 380 F.3d at 1073.[2]

In determining whether a nonresident defendant's contacts with Missouri are sufficient to subject it to personal jurisdiction here, the Court considers five factors, the first three of which are the most important: (1) the nature and quality of that defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the connection of the cause of

---

[2]Where a defendant has "continuous and systematic" contacts with a forum state, courts in the state may exercise general personal jurisdiction over the defendant, even where the cause of action or alleged injury is unrelated to those contacts or has no connection with the forum state.  *See Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 (1984)).  GME does not argue that either defendant is subject to general personal jurisdiction in Missouri.  Rather, GME argues that this Court may exercise specific personal jurisdiction over Defendants due to their contacts with Missouri related to the contracts at issue in this case.

6

action to the contacts; (4) the interest of the forum state in the litigation; and (5) the convenience or inconvenience to the parties. *Id.* at 586.

### A. ADC USA

ADC USA's contacts with the State of Missouri are sufficient for this Court to exercise personal jurisdiction over it. As set out above, ADC USA's President, Tim Soule, along with Mr. Geraghty, went to Missouri for the purpose of negotiating the purchase of cell phone towers from GME. Further, through Mr. Soule, ADC USA signed a GME Account Enrollment form under which GME would send price quotations at the request of ADC USA, and GME would receive purchase orders in response which referenced those price quotations and also requested delivery to ADC Trinidad. Both the Account Enrollment form and the price quotations stated that acceptance was subject to certain Terms and Conditions, including a Missouri choice of law and forum selection clause.

ADC USA's contacts with Missouri were directly related to the contracts that are the subject matter of this litigation. The choice of law provision is also a factor indicating that ADC USA has purposely availed itself in Missouri. *See Wessels, Arnold & Henderson v. National Medical Waste, Inc.*, 65 F.3d 1427, 1434 (8th Cir. 1995) (noting that a choice-of-law clause "is an important factor in determining whether [a] defendant has purposely availed itself in the forum state," although such a provision "is insufficient standing alone to confer jurisdiction."). Taken together, these contacts show that ADC USA purposefully availed

7

itself of the privilege of doing business in Missouri and could reasonably expect to be sued there.[3]

Thus, the first three factors of the jurisdictional inquiry weigh in favor of the Court's exercise of specific personal jurisdiction in this case. The final two factors, which are given less weight in the Court's analysis, do not weigh against the exercise of jurisdiction here. Missouri has an interest in providing a forum for its residents when an out of state resident seeks to transact business in Missouri and there is no indication that Missouri is so inconvenient a forum as to deprive the Court of jurisdiction over ADC USA. GME has met its burden of establishing a prima facie showing of personal jurisdiction over ADC USA, and the Court denies ADC USA's motion.

**B.     ADC UK**

Plaintiff argues that the Court has specific personal jurisdiction over ADC UK because the company, through its employee and agent, Gavin Geraghty, has sufficient contacts with the State of Missouri. As set out above, Gavin Geraghty, along with Tim Soule, President of ADC USA, traveled to the State of Missouri for the purpose of negotiating the purchase of the cell phone towers with GME. Further, on December 7, 2006,

---

[3]Plaintiff also argues that ADC USA has consented to jurisdiction because the GME Account Enrollment signed by President Soule referenced GME's Terms and Conditions, which included a choice of law and forum selection clause. Because the Court finds that ADC USA's contacts with the State of Missouri are such that the Court's exercise of jurisdiction over it will not violate due process, it need not consider whether ADC USA also consented to jurisdiction in Missouri.

Mr. Geraghty, as General Manager of ADC Trinidad, signed a purchase order which was sent to GME in Missouri, in response to the price quotations sent by GME to ADC USA.

ADC UK argues in its Reply brief that "Mr. Geraghty's position during the period at issue was as General Manager . . . and representative of . . . ADC Trinidad & Tobago. . . . Mr. Geraghty did not visit Missouri as an agent of ADC UK, and therefore could not have established minimum contacts for ADC UK[.]" ADC UK's Reply Sugg. ¶ 3. "Although a court may exercise personal jurisdiction over a defendant through the acts of [its] agent, '[a] party who relies upon the authority of an agent has the burden of proof regarding both the fact of the agency relationship and the scope of the agent's authority.'" *Romak USA, Inc. v. Rich*, 384 F.3d 979, 985 (8th Cir. 2004) (quoting *Karr-Bick Kitchens & Bath, Inc. v. Gemini Coatings, Inc.*, 932 S.W.2d 877, 879 (Mo. Ct. App. 1996)).

GME has presented evidence that when Mr. Geraghty traveled to Missouri to negotiate the terms of a contract with GME, and when he subsequently sent a signed purchase order to GME in Missouri on behalf of ADC Trinidad, he did so as ADC UK's agent. GME has presented evidence that during the relevant time period Mr. Geraghty was a paid employee of ADC UK, that he was assigned by ADC UK to work as General Manager at ADC Trinidad as part of his employment with ADC UK, and that Mr. Geraghty had agreed with ADC UK to devote his time and energies to and to act at all times for the benefit of the Alan Dick group of companies. While ADC UK denies that Mr. Geraghty was acting as its agent when he went to Missouri to negotiate the purchase of cell phone towers from GME

9

and when he signed a purchase order for such towers which was sent to GME, this is a dispute of fact the Court must resolve in GME's favor. *Digi-Tel*, 89 F.3d at 522.

ADC UK, through its agent Gavin Geraghty, negotiated a contract in Missouri and signed purchase orders sent to GME in Missouri. These contacts are directly related to the contracts which are the subject matter of this litigation. ADC UK's actions in Missouri are sufficient for the Court to find that ADC UK purposefully availed itself of the protections and benefits of Missouri. ADC UK could reasonably anticipate being haled into court in Missouri for litigation involving these contracts with GME. ADC UK has sufficient minimum contacts with Missouri such that this Court's exercise of personal jurisdiction over it does not offend "traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp.*, 444 U.S. at 291–92.

The first three factors the Court must consider weigh in favor of the Court's exercise of specific personal jurisdiction over ADC UK in this case. ADC UK made contacts with Missouri through Mr. Geraghty involving the contracts at issue in this litigation. Further, as noted above, Missouri obviously has an interest in providing a forum for its residents, and the fifth factor – the convenience or inconvenience to the parties of litigating in Missouri – does not weigh against the Court's exercise of jurisdiction in this case. The parties negotiated the contracts at issue in this case in Missouri, indicating that travel to and litigation in Missouri would not be so inconvenient as to deprive the Court of specific personal jurisdiction. GME has met its burden of establishing a prima facie showing of personal jurisdiction over ADC UK, and the Court must therefore deny ADC UK's motion.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Defendant ADC UK's Motion to Dismiss for Lack of Jurisdiction [Doc. # 43] is DENIED; it is further

ORDERED that Defendant ADC USA's Motion to Dismiss for Lack of Jurisdiction [Doc. # 46] is DENIED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: May 12, 2009
Jefferson City, Missouri